UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GREG M. DENUEL,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security, [1]<br><br>　　　　　　　Defendant. | Case No. 3:12-cv-05449-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 13, 2013 |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 16, 2009, plaintiff filed an application for disability insurance benefits and another one for SSI benefits[2], alleging he became disabled beginning October 15, 2008, due to

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

back problems and hepatitis C. See Administrative Record ("AR") 17, 123-25, 162. Both applications were denied upon initial administrative review on March 12, 2009 and on reconsideration on June 16, 2009. See AR 17, 65-76, 79-83. A hearing was held before an administrative law judge ("ALJ") on October 13, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 31-64.

In a decision dated November 23, 2010, the ALJ determined plaintiff to be not disabled. See AR 17-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 15, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On June 1, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on November 6, 2012. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical opinion evidence from Joseph M. Pullara, M.D., David J. Kanters, A.R.N.P., Sarah E. Kirkegaard, A.R.N.P., and Elizabeth St. Louis, M.D.; (2) in discounting plaintiff's credibility; (3) in assessing his residual functional capacity; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical opinion evidence from Dr. Pullara, Mr. Kanters and Dr. St. Louis, and therefore in

---

[2] As pointed out by plaintiff, his application for SSI benefits does not appear to have been included in the record, although one apparently was filed, since as noted above it was denied both on initial administrative review and on reconsideration. See ECF #14, p. 2 n. 1.

REPORT AND RECOMMENDATION - 2

assessing plaintiff's residual functional capacity and in finding her to be capable of performing other jobs existing in significant numbers in the national economy.  Also for the reasons set forth below, though, while defendant's decision to deny benefits should be reversed on this basis, this matter be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see</u> <u>also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting

REPORT AND RECOMMENDATION - 3

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [3]

I.	The ALJ's Evaluation of the Medical Opinion Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

---

[3] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Pullara

With respect to the medical opinion evidence from Dr. Pullara, the ALJ found in relevant part:

> Joseph M. Pullara, M.D. completed a physical residual functional capacity questionnaire on September 22, 2010, diagnosing the claimant with chronic

REPORT AND RECOMMENDATION - 5

> lumbar spine disease. He stated the claimant's pain was constant with moderate severity. During a typical workday, the claimant's pain would occasionally interfere with his ability to work but he could work in low stress jobs. During an eight-hour workday, the claimant could sit and stand for fifteen minutes at one time. Cumulatively, he could sit, stand and walk about two hours during the day.
>
> Dr. Pullara thought the claimant should walk every fifteen minutes for five minutes. He would need a job that permitted shifting positions from sitting, standing or walking and frequent breaks were required every two hour for ten minutes. The claimant could frequently lift less than ten pounds, occasionally ten, rarely twenty and never more. Frequently, the claimant could turn his head and occasionally look up or hold his head in a static position. He could occasionally climb ladders and stairs. His impairments would cause him to be absent three times a month. Exhibit 14F/1 – 5. The undersigned gives some weight to this assessment. The residual functional capacity assessment is weighed heavily since Dr. Pullara has treated the claimant and is familiar with his limitations. However, the work absences are unsupported by the record as a whole or the [evaluation from Dr. St. Louis] and seem to be based mostly on the claimant's description of his symptoms, therefore, this portion is given little weight.

AR 22-23. Plaintiff argues that contrary to the findings of the ALJ, "Dr. Pullara's opinion that [he] would likely miss three days of work per month is consistent with the record as a whole." ECF #14, p. 8. But plaintiff points to no such evidence, nor does the undersigned find objective support for that opinion in the record, including Dr. Pullar's own treatment notes. See AR 213-14, 218-21, 224-33, 236-38, 241-42, 268-75, 282-83, 284-87, 308-12, 338, 343-49, 352, 355-58, 360-61, 364-67, 369-70, 397; Batson, 359 F.3d at 1195 (ALJ need not accept treating physician's opinion if it is inadequately supported by clinical findings or "by the record as a whole"). Thus although the undersigned agrees for the reasons discussed below that the ALJ's reliance on the opinion of Dr. St. Louis is not sufficiently supported, the overall objective medical evidence in the record is in line with the ALJ's findings here.

The undersigned does agree with plaintiff, however, that the ALJ erred in failing to state any reason for apparently rejecting the other limitations assessed by Dr. Pullara, despite giving at

REPORT AND RECOMMENDATION - 6

least "some weight" to the functional assessment Dr. Pullara provided. AR 23.  For example, Dr. Pullara found plaintiff to be limited in the following areas:

- during a typical workday, plaintiff's experience of pain or other symptoms would be severe enough to occasionally (i.e. six percent to 33 percent of an eight-hour workday) interfere with attention and concentration needed to perform even simple work tasks;

- plaintiff would be capable of tolerating low stress job because high stress would exacerbate his pain;

- plaintiff could sit for only 15 minutes at one time;

- plaintiff could sit for a total of about two hours and stand/walk for a total of about two hours in an eight-hour workday;

- plaintiff would need to walk around for a period of five minutes every 15 minutes in an eight-hour workday;

- plaintiff would need to shift positions at will from sitting, standing or walking;

- plaintiff would need to take unscheduled work breaks every two hours for a period of 10 minutes before returning to work;

- plaintiff can only turn his head right or left, look up and keep his head in static position occasionally; and

- plaintiff can never stoop (bend) and can rarely crouch/squat.

See AR 393-95.  The ALJ in turn found plaintiff to be capable of performing sedentary work, but only with the following additional limitations:

> **. . . The claimant can stand or walk for fifteen minutes at a time, for two hour [sic] during an eight-hour workday.  The claimant can sit for a total of fifteen to thirty minutes at [sic] time, throughout the course of an eight-hour workday.  The claimant can frequently lift and/or carry less than ten pounds, occasionally lift and/or carry ten pounds and rarely lift and/or carry twenty pounds.  The claimant is unable to lift more than twenty pounds.  The claimant can occasionally climb stairs and ladders.**

AR 21 (emphasis in original).  These limitations do not fully encompass those assessed by Dr. Pullara above.  While defendant argues the evidence in the record does not support a finding that

REPORT AND RECOMMENDATION - 7

plaintiff has those additional limitations, it is not at all clear that the ALJ herself found this to be the case, particularly in light of her statement that she was giving "some weight" to Dr. Pullara's opinion other than to that portion thereof concerning missing work days.[4] AR 22-23.  The ALJ's implied rejection of the remainder of Dr. Pullara's opinion cannot be upheld at this time.

B.   Mr. Kanters

Plaintiff also challenges the ALJ's findings concerning the medical opinion provided by Mr. Kanters, which read in relevant part:

> . . . David J. Kanters, A.R.N.P. completed a Washington State Department of Social and Health Services physical evaluation on December 26, 2008.  Mr. Kanters noted the claimant's history of lumbar pain reducing his flexion.  His pain would moderately limit the claimant's ability to stand, walk, lift and carry.  On this basis, Mr. Kanters found the claimant limited to sedentary to light work, with the need to alternate positions.  A range of motion evaluation chart was included but it did not appear to be completed by Mr. Kanters.  Exhibit 1F/6 – 11.  The undersigned gives significant weight to this evaluation.  Although Mr. Kanters is not considered an acceptable medical source under the Social Security Administration regulations, his finding, of sedentary/light work is consistent with the record and the other evaluations.

AR 22.  Specifically, plaintiff argues the ALJ erred in failing to note Mr. Kanters stated that he would need to alternate positions "as needed frequently." AR 220.  Plaintiff argues as well that the opinion of Mr. Kanters is not fully consistent with all of the limitations Dr. Pullara assessed.  The undersigned agrees on both counts.  While it is true as defendant asserts that the ALJ need not assert "magic words"[5] to support her determination, it is not at all clear that the limitation to sitting for 15 to 30 minutes at a time and standing for 15 minutes at a time adopted by the ALJ equates to an ability to alternate positions "frequently", or that the ALJ had in mind that need to

---

[4] See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not discuss).

[5] See Magallanes, 881 F.2d 747, 755, (9th Cir. 1989) (ALJ need not recite "magic words" in his or her decision, as no specific "incantation" is required).

REPORT AND RECOMMENDATION - 8

alternating positions when assessing those sitting and standing/walking limitations. Mr. Kanters, furthermore, is not a licensed physician, and thus his opinion generally is entitled to less weight than that provided by Dr. Pullara.[6] Given this, and the fact that Dr. Pullara found plaintiff to be more limited than did Mr. Kanters, again it cannot be said at this time that the ALJ was justified in relying on the opinion of the latter over that of the former.[7]

C. Dr. St. Louis

In regard to the opinion of Dr. St. Louis, the ALJ found in relevant part:

> . . . Elizabeth St. Louis, M.D. found the claimant could perform light work with postural and environmental limitations. Exhibits 4F/1 – 8, 11F/1. The psychiatric review technique assessment did not find any medically determinable psychological impairments. Exhibit 10F/1 – 12. The undersigned gives the state assessments significant weight because the evidence supports their findings and the assessors are familiar with the Social Security Administration regulations. Giving the claimant the benefit of the doubt, the undersigned has limited the claimant to sedentary work.

AR 23. Plaintiff argues the ALJ erred in relying on the opinion of Dr. Louis, because she merely affirmed the findings of a non-medical source without providing a written explanation therefor of her own. See AR 268-75, 338. It is reasonable to assume, however, that in affirming the findings of the non-medical source, Dr. St. Louis also was adopting the explanation that source provided

---

[6] Because a licensed nurse practitioner is not an "acceptable medical source," a licensed nurse practitioner's opinion may be given less weight than the opinion of an acceptable medical source, such as a licensed physician. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d).

[7] It should be noted though that the opinion of a licensed nurse, while "not technically" from an "acceptable medical source," is nevertheless considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record. SSR 06-03p, 2006 WL 2329939 *3. Accordingly, although"[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals,' . . . depending on the particular facts in a case, . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at *5. In this case, given the conflicting medical evidence in the record concerning the severity of plaintiff's physical limitations discussed herein – including the relative lack of significant objective clinical findings – it is not yet clear whether the opinion of Dr. Pullara or that of Mr. Kanters is entitled to greater weight, even considering the fact that Dr. Pullara is plaintiff's treating physician.

REPORT AND RECOMMENDATION - 9

for those findings. See id.  The undersigned, therefore, finds no merit in plaintiff's argument.  On the other hand, the undersigned agrees with plaintiff that because as discussed above the ALJ did not sufficiently explain her failure to adopt all of the functional limitations Dr. Pullara assessed, it is unclear whether the opinion of Dr. St. Louis is supported by the record, particularly since as pointed out by plaintiff she did not have the opportunity to review those limitations.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent

REPORT AND RECOMMENDATION - 10

with the medical or other evidence." Id. at *7.

As noted above, the ALJ found plaintiff had the residual functional capacity:

> **. . . to perform sedentary work . . . [She] can stand or walk for fifteen minutes at a time, for two hour [sic] during an eight-hour workday. [She] can sit for a total of fifteen to thirty minutes at [sic] time, throughout the course of an eight-hour workday. [She] can frequently lift and/or carry less than ten pounds, occasionally lift and/or carry ten pounds and rarely lift and/or carry twenty pounds. [She] is unable to lift more than twenty pounds. [She] can occasionally climb stairs and ladders.**

AR 21 (emphasis in original). Plaintiff argues, and the undersigned agrees, that because the ALJ erred in evaluating the medical opinion evidence provided by Dr. Pullara, Mr. Kanters and Dr. St. Louis, it cannot be said at this time that the above RFC assessment is completely accurate and thus supported by substantial evidence. Here too, therefore, the ALJ erred.

III.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the

REPORT AND RECOMMENDATION - 11

claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 56-58.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 56-59.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 23-24.

Plaintiff argues, and once more the undersigned agrees, that in light of the ALJ's errors in evaluating the medical opinion evidence in the record, and thus in assessing his RFC, discussed above, the hypothetical question posed to the vocational expect cannot be said to be completely accurate at this time, and therefore the ALJ erred in relying on the vocational expert's response thereto in finding plaintiff to be not disabled at step five.  The undersigned rejects, however, the argument of plaintiff that the ALJ should have adopted the further testimony provided by the vocational expert that indicates a finding of disability would be appropriate if the additional more severe functional limitations offered at the hearing were adopted. See AR 61-63.  This is because the record, as noted by the ALJ and as indicated above in regard to the opinion of Dr. Pullara, is fairly lacking in terms of objective clinical findings supportive of such disabling limitations. See AR 21-23; 213-14, 218-21, 224-33, 236-38, 241-42, 268-75, 282-83, 284-87, 308-12, 338, 343-49, 352, 355-58, 360-61, 364-67, 369-70, 397.

REPORT AND RECOMMENDATION - 12

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record concerning plaintiff's physical impairments and limitations, and therefore in regard to his residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues by the Commissioner is appropriate in this case.

Plaintiff argues the limitations Dr. Pullara assessed that the ALJ failed to properly reject should be credited as true. It is true that where the ALJ has failed "to provide adequate reasons

REPORT AND RECOMMENDATION - 13

for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence – such as the lack of supporting objective clinical findings and conflicting medical opinions in the record discussed above – this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be found to have been met. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). Accordingly, the undersigned declines to, and recommends that the Court not, do so here.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled, that the Court reverse the defendant's decision to deny and that it remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 13, 2013**, as noted in the caption.

DATED this 26th day of August, 2013.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14